BETTY D. LOVELL, PLAINTIFF v. ROWAN MUTUAL FIRE INSURANCE COM-
PANY AND GRAHAM M. CARLTON, SUBSTITUTED TRUSTEE, DEFEND-
ANTS AND ROWAN MUTUAL FIRE INSURANCE COMPANY, THIRD—PARTY
PLAINTIFF v. ROBERT J. LOVELL, THIRD-PARTY DEFENDANT

No. 7919SC508

(Filed 15 April 1980)

1. **Husband and Wife § 15; Insurance §§ 121, 134— entirety property—inten-
tional burning by husband—no right by innocent wife to recover fire insurance
proceeds**

   An innocent wife could not recover under a fire insurance policy issued to
her husband insuring property owned by them as tenants by the entirety
when the loss by fire was occasioned by the intentional burning of the proper-
ty by the husband and the policy provided that the insurer would not be liable
for loss by fire caused by the neglect of the insured to use all reasonable
means to "use and preserve the property, at and after a loss."

2. **Insurance § 135.1— fire insurance—no obligation to insureds—payment to
mortgagee—assignment of note and mortgage**

   Where an insurer had no obligation to insureds under a fire insurance
policy for the intentional burning of a house but was required to pay a mort-
gagee named in the policy, the insurer had the right under the policy to take
an assignment of the note and deed of trust from the mortgagee and to in-
stitute foreclosure proceedings upon default.

3. **Mortgages and Deeds of Trust § 26— notice of foreclosure hearing—wrong
year stated—no fatal defect**

   A notice of a foreclosure hearing before the clerk of court was not fatally
defective because the notice, dated 8 December 1978, stated that the hearing
would be held on 3 January 1978 rather than 1979. G.S. 45-21.16(a).

   Judge HILL dissenting.

APPEAL by plaintiff from *Hairston, Judge.* Judgment entered
6 March 1979 in Superior Court, ROWAN County. Heard in the
Court of Appeals 9 January 1980.

Plaintiff alleged that she and her husband owned certain real
estate in Rowan County as tenants by the entirety, the property
having been conveyed to them by plaintiff's parents as a gift. The
house situate on the lot and the household and personal property
contained therein were insured by Rowan Mutual Fire Insurance
Company in the amount of $30,000. The house was worth at least
$27,000 and the value of plaintiff's personal property in the house
had a value immediately before the fire of more than $3,000. The

house was destroyed by fire on 24 September 1978, at a time when the insurance policy issued by defendant Insurance Company was in full force and effect. At the time of the fire, plaintiff and her husband were indebted to Citizens Savings and Loan Association, the note evidencing the debt being secured by a deed of trust on the property. At the time of the fire, the balance due on that debt was $15,103.75. Defendant Insurance Company has paid to Citizens Savings and Loan Association the balance due on the note and has taken an assignment of the note and deed of trust. Also at the time of the fire, plaintiff and her husband were indebted to North Carolina National Bank, which debt was evidenced by a note secured by a deed of trust conveying the property. At the time of the fire, this debt was $4,331.20. Subsequent to the fire, defendant Insurance Company paid this note, and the bank assigned to it the note and deed of trust. The fire which destroyed the house was set by plaintiff's husband who pled guilty to the felonious burning of his dwelling house. Plaintiff alleges that as a result of the wrongful acts of her husband and "pursuant to the legal effect and consequence of the plaintiff owning the property as an estate by the entirety," she is entitled to all the proceeds from the insurance policy, representing the difference between the total coverage and the amounts paid Citizens Savings and Loan Association and North Carolina National Bank, specifically $10,565.05. Plaintiff further alleges that defendant Carlton, Substituted Trustee, is wrongfully and illegally attempting to foreclose the deed of trust and sell the land, even though, pursuant to the terms of the policy of insurance, the note secured by the deed of trust has been paid in full. She asks that she recover of the defendant Insurance Company $14,896.25 and that any amount realized from the foreclosure sale be paid over to her after deducting the costs of sale. Plaintiff also seeks punitive damages, a question not germane to this appeal.

Defendant, Insurance Company and Carlton, Substituted Trustee, answered admitting coverage, admitting that the property was owned by plaintiff and her husband as tenants by the entirety, that plaintiff's husband had been charged with the felonious and willful destructive fire of the house, that a foreclosure proceeding had been begun. It denied all other allegations including the allegation that the "fire was a total loss".

As a further defense, the Insurance Company averred that Robert J. Lovell, plaintiff's husband, was the only named insured in the policy, which contained a provision that the Company would not be liable for any loss by fire caused by the neglect of the insured to use all reasonable means to "use and preserve the property, at and after a loss" except to any mortgagee named in the policy. Since the named insured violated those policy provisions by intentionally burning the house, the Company was discharged of all liability except to the mortgagee.

As a second further defense, the defendant Company averred that if any amount should become payable under the policy, the check would have to be made to Robert Lovell, who has forfeited all rights to the proceeds. If the plaintiff were allowed to recover any amount, the husband would benefit since plaintiff and Robert Lovell are still married.

For its first counterclaim against plaintiff, Insurance Company alleged that it is entitled to recover of plaintiff the amount paid to Citizens Savings and Loan Association.

For its second counterclaim, Insurance Company alleged that it is entitled to recover the amount paid North Carolina National Bank.

As its first third-party claim against Robert J. Lovell, third-party defendant, the Insurance Company alleged its entitlement to recover the $15,103.75 paid to Citizens Savings and Loan Association.

As its second third-party claim, the Insurance Company seeks to recover the $4,331.20 paid to North Carolina National Bank, and for its third third-party claim, it alleges that third-party defendant Lovell is obligated to repay it for all amounts it shall be required to pay under its policy.

Defendant moved for summary judgment and filed with the motion complaint, answer, and consent judgment in an action by Betty D. Lovell vs. Robert J. Lovell, for divorce a mensa et thoro, alimony, child custody, and child support, and judgment in the criminal action against Robert J. Lovell, all properly authenticated, together with affidavit of an official of the Savings and Loan Association that all premiums for fire insurance were paid

by Betty and Robert Lovell and none was paid by the Citizens Savings and Loan Association.

The court granted the motion and incorporated in the order a finding that there is no just reason to delay ruling on this claim pending determination of the counterclaim and the third-party claim. Plaintiff appealed.

*Coughenour, Linn and Short, by W. C. Coughenour, for plaintiff appellant.*

*Carlton and Rhodes, by Graham M. Carlton, for defendant appellees.*

MORRIS, Chief Judge.

[1] This case presents a question of first impression in this State; *i.e.* whether an innocent wife can recover under an insurance policy issued to her husband insuring property owned by them as tenants by the entirety when the loss by fire was occasioned by the intentional burning of the property by the husband. The answer must be governed by the application of the law relating to tenancies by the entirety as well as the provisions of the policy of insurance.

The properties and incidents of this peculiar estate of husband and wife were concisely set out in *Davis v. Bass*, 188 N.C. 200, 124 S.E. 566 (1924). Because decision rests in large measure on the necessary application of these principles, we summarize what was said by Chief Justice Stacy in *Davis v. Bass, supra.*

> 7. A lease by the husband alone, without the wife's joinder, is valid during coverture, because he is entitled to the possession, income, increase or usufruct of the property during their joint lives. . . .
>
> 8. Where an estate is conveyed to a man and woman who are not husband and wife, but who afterwards intermarry, as they took originally by moieties, they will continue to hold said estate by moieties after the marriage. Hence, there is nothing in the relation of husband and wife which prevents them from taking originally and thereafter holding their interests as tenants in common, if they so desire. . . . The intention appearing, a conveyance may be made to husband and

wife as tenants in common; but otherwise they will take by the entirety with right of survivorship. . . .

9. An absolute divorce destroys the unity of husband and wife, and therefore converts an estate by the entirety into a tenancy in common. . . .

. . .

11. While the husband is entitled to the possession of an estate held by the entirety and to take the rents and profits arising therefrom during coverture, with immunity of said estate from attachment or sale under execution, yet in a proceeding for alimony without divorce under C.S., 1667, the usufruct of the property may be subjected to the payment of an award for the wife's reasonable subsistence and that of the children of the marriage, together with counsel fees as allowed by ch. 123, Public Laws, 1921. . . .

. . .

12. Neither party is entitled to partition. . . .

13. It has been held that an action by husband and wife, involving title or possession to lands held by the entirety, will not be barred by the statute of limitations as to one unless it bars both. [Citation omitted.]

14. A sale by husband and wife and a division of the proceeds ends an estate by the entirety. *Moore v. Trust Co.*, 178 N.C., 118. But it may be otherwise where sale is made and one dies before division of purchase money. [Citation omitted.]

15. A tenancy by the entirety may exist in lands whether the estate be in fee, for life, or for years, and whether the same be in possession, reversion, or remainder (30 C.J., 566); but in this jurisdiction it is held that there can be no estate by the entirety in personal property. [Citation omitted.]

16. Where land is conveyed or devised to a husband and wife for and during the term of their natural lives, or during the life of the survivor, with remainder to their heirs in fee, said husband and wife, under the rule in *Shelley's case*, take a fee-simple estate as tenants by the entirety in the property so conveyed or devised. [Citation omitted.]

17. The above rules apply to devises to husband and wife, and also to contracts to convey land to husband and wife. *Stamper v. Stamper*, 121 N.C., 252. They likewise apply to a gift or devise to husband and wife "during their natural lives." [Citation omitted.]

188 N.C. at 206-209, 124 S.E. at 569-571.

In *Carter v. Insurance Co.*, 242 N.C. 578, 89 S.E. 2d 122 (1955), the Court was asked to determine the ownership of the proceeds of a fire insurance policy. Plaintiff and his wife owned, the property as tenants by the entirety, but they were living separate and apart at the time the policy was issued and at the time the fire occurred occasioning the loss. Plaintiff husband was in possession of the property, applied for the insurance in his name only, and paid the premium therefor. He made demand on the insurance company for the entire proceeds of $4,000. After the fire, the wife obtained an absolute divorce from plaintiff, and made claim against the insurance company for one-half the proceeds. Both demands were refused, and husband brought action against the insurance company, which, with consent of all parties, paid the proceeds into court and was dicharged from liability. The wife was then substituted as defendant and was allowed to aver her claim for one-half the money on deposit. The Court held that she was entitled to one-half the proceeds because of the divorce. In reaching that conclusion the Court held that any insurance on the interest of one tenant by the entirety inured to benefit of the other, saying:

> It may be conceded that the plaintiff husband had an insurable interest in the property of which he and his wife were seized as tenants by the entirety. *However, since the proprietary interest of the husband was an inseparable part of the single-entity title held in unity by him and his wife, his insurable interest ran to the whole of the property and covered the entire estate.* [Citations omitted.] *We conclude that the insurance policy as written and the loss benefits created thereby inured to the benefit of the entire estate as owned by both husband and wife.* (Emphasis added.)

242 N.C. at 580, 89 S.E. 2d at 124. *See also Forsyth County v. Plemmons*, 2 N.C. App. 373, 163 S.E. 2d 97 (1968).

Since neither tenant in an estate by the entirety can insure his or her interest as a separate moiety apart from the estate owned by the two of them as an indivisible estate without the insurance inuring the benefit of the entirety, it follows that each tenant must accept as an act of both of them any act of the other affecting the estate. The fact that the husband was the named insured is of no consequence.

The interests of the husband and wife are nonseparable, and where this situation exists, courts generally hold that the innocent insured may not recover under the policy following an intentional act on the part of one of the insured tenants which would otherwise require payment for a loss to the property insured. *See* Annot. 24 A.L.R. 3d 450 (1969). In *Rockingham Mutual Insurance Co., v. Hummel,* --- Va. ---, 250 S.E. 2d 774 (1979), the Court refused recovery to an innocent wife whose husband had intentionally burned property owned by them as tenants by the entirety and the two were named insureds. The action was brought by the insurer to recover funds it had paid to the couple on the loss claimed. The trial court had sustained the wife's demurrer but continued the action as to the husband. The Court held that the two had a joint obligation to refrain from defrauding the insurer, and even though the wife was entirely innocent, she was not entitled to share in the insurance proceeds. The Court cited with approval *Klemens v. Badger Mututal Insurance Co. of Milwaukee,* 8 Wis. 2d 565, 99 N.W. 2d 865 (1959), a case with the same holding on almost identical facts, and *Vasilion v. Vasilion,* 192 Va. 735, 66 S.E. 2d 599 (1951), where the Court held that neither tenant in an estate by the entirety could sever the estate by his own act, for its holding that the legal interest in the subject matter of the policy was joint and not severable. *See also Mele v. All-Star Insurance Corp.,* 453 F. Supp. 1338 (E.D.Pa. 1978).

A well-reasoned opinion is *Matyuf v. Phoenix Insurance Co.,* 27 D. & C. 2d (Pa.) 351 (1933) [unreported until 1962]. Insurance Company has issued to Frank T. Matyuf and his wife, Julia, a policy of insurance insuring against loss by fire a building owned by them as tenants by the entirety. Less than thirty days after the policy was issued, the building was destroyed by a fire set by Frank Matyuf, who had that day purchased additional insurance in his own name without the knowledge or consent of his wife. The wife was completely innocent of any wrongdoing with respect

to the fire and knew nothing about it. Frank and Julia Matyuf brought suit to recover the insurance coverage. The policy there contained language identical to the language in the policy before us; *i.e.*. "This Company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by: . . . (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, . . ." and "Unless otherwise provided in writing added hereto this Company shall not be liable for loss occurring (a) while the hazard is increased by any means within the control or knowledge of the insured."

The Court recognized that the willful burning of the building was a fraud against the wife as well as against the insurer but held that "to allow a recovery by or for the wife alone, to the extent of one-half of the value of house, upon the ground that she is entitled to be indemnified for *her* loss, would be to substitute another contract in the place of the one made, which was for an insurance to protect the indivisible ownership by entireties." 27 D. & C. 2d (Pa.) at 359. The Court further held that the effect of the provisions as to neglect to use all reasonable means to save and preserve the property in event of a fire was to impose upon the tenants jointly the duty to use all reasonable means to preserve the property in event of fire so that each became responsible not only for his own failure, if any, to so act but also became responsible for the failure to act of the cotenant.

We agree with the Court in *Matyuf* that if either of the tenants "fraudulently violated the good faith owing to the insured, . . . both are chargeable with and affected by such violation, to the extent of the operating as an obstacle to recovery. . . . Plaintiffs . . . are intimately connected together as joint tenants by entireties [sic], each of them being seized of the property as an indivisible whole, and either, when in the physical possession and control of the property, holding for and representing therein the other; . . ." 27 D. & C. 2d (Pa.) at 361-362.

While plaintiff may have an action against her husband, she cannot recover her loss from defendant insurer.

[2] Since the insurer has no liability to plaintiff, it had the right under the policy to take an assignment of the debt owed to the

Savings and Loan and initiate foreclosure proceedings upon default. The policy provides:

> Whenever this Company shall pay the mortgagee (or trustee) any sum for loss under this policy and shall claim that, as to the mortgagor or owners, no liability therefor existed, this Company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of his, her or their claim.

> The above Mortgage Clause DOES NOT apply to personal property.

Insurer's payment to Savings and Loan was made by reason of its obligation under the contract of insurance. It did not affect the outstanding indebtedness of plaintiff and her husband. Their debt was not extinguished, and under the specific policy provisions, the insurer is subrogated to the rights of the mortgagee.

[3] Plaintiff argues in her brief that notice of the foreclosure hearing before the Clerk was improper. The notice, dated 8 December 1978, notified her that a hearing would be had in the Clerk's office on 3 January *1978* (rather than 1979) at 11:00 o'clock a.m., and further notified her that the sale was scheduled for 25 January 1979.

G.S. 45-21.16(a) requires that a notice of hearing shall be given to

> (b)(3) Every record owner of the real estate whose interest is of record in the county where the real property is located at the time of giving notice. The term "record owner" means any person owning a present or future interest of record in the real property which interest would be affected by the foreclosure proceeding, but does not mean or include the trustee in a deed of trust or the owner or holder of a mort-

gage, deed of trust, mechanic's or materialman's lien, or other lien or security interest in the real property.

Section (c) provides:

(c) Notice shall be in writing and shall state in a manner reasonably calculated to make the party entitled to notice aware of the following:

(1) The particular real estate security interest being foreclosed, with such a description as is necessary to identify the real property, including the date, original amount, and book and page of the security instrument.

(2) The name and address of the holder of the security instrument, and if different from the original holder, his name and address.

(3) The nature of the default claimed.

(4) The fact, if such be the case, that the secured creditor has accelerated the maturity of the debt.

(5) Any right of the debtor to pay the indebtedness or cure the default if such is permitted.

(6) Repealed by Section Laws 1977, c. 359, s. 7.

(7) The right of the debtor (or other party served) to appear before the clerk of court at a time and on a date specified, at which appearance he shall be afforded the opportunity to show cause as to why the foreclosure should not be allowed to be held. The notice shall contain a statement that if the debtor does not intend to contest the creditor's allegations of default, the debtor does not have to appear at the hearing and that his failure to attend the hearing will not affect his right to pay the indebtedness and thereby prevent the proposed sale, or to attend the actual sale, should he elect to do so.

(8) That if the foreclosure sale is consummated, the purchaser will be entitled to possession of the real estate as of the date of delivery of his deed, and that the debtor, if still in possession, can then be evicted.

(9) That the debtor should keep the trustee or mortgagee notified in writing of his address so that he can be

mailed copies of the notice of foreclosure setting forth the terms under which the sale will be held, and notice of any postponements or resales.

(10) If the notice of hearing is intended to serve also as a notice of sale, such additional information as is set forth in G.S. 45-21.16A.

It is quite clear that the notice was sufficient to make plaintiff aware of all the requirements except that an obviously inadvertent error placed the date as 1978 rather than 1979, an error which is frequently made in notices, letters, and other documents in December and January of each year. It seems obvious, however, that plaintiff could not have been misled. A telephone call to the Clerk's office would have certainly cleared up any confusion. Nor does plaintiff contend that she was not made aware of any other requirement of the statute. Despite the fact that this question should properly be raised in the foreclosure proceeding, we hold that the notice was not sufficiently defective as to set aside the proceedings.

Affirmed.

Judge PARKER concurs.

Judge HILL dissents.

Judge HILL dissenting.

I must dissent in this case of first impression in our Court. I do so because the facts herein are distinguishable from those in the cases cited by the majority of this Court and because simple equity demands it.

At the time of the fire the wife was living in a state of separation from her husband and subsequent thereto brought an action for divorce from him. The arsonist husband burned the jointly owned dwelling for spite, in retaliation against his wife, and has been convicted in the criminal court for such wrongdoing. These facts present a marked difference from the cases cited by the majority where the arsonist spouse burned the premises to collect from the insurance company—and the other cotenant spouse simply was innocent of any wrongdoing.

I have no quarrel with the premise that in cases where the purpose of the arson is directed toward a recovery from an insurance company, joint tenants have a mutual obligation to preserve jointly held property from loss by fire. Such was not the intent of the arsonist in the instant case. Furthermore, there is no evidence in the record that the wife was not doing all she could to preserve the property.

Had the arsonist been a stranger, there would have been no question of liability by the insurance carrier. Similarly, in this case where the husband and wife were like strangers to each other, I cannot see that a record severance of the marriage relationship by divorce decree should be a prerequisite to obtaining insurance coverage.

In this case the property on which the dwelling was constructed was given by the wife's parents to husband and wife jointly. The insurance carrier chose not to pay the balance of the note secured by the deed of trust on the real estate to the mortgagee; rather, it chose to buy the note and foreclose the deed of trust which would further add to the loss suffered by the wife. It is argued that the insurance contract provided for this. I do not agree under the facts of this case. The mortgage indebtedness should be paid as set out below.

The proceeds of an insurance policy is cash. Cash is personal property and is separable.

I would hold under the circumstances of this case that one-half of the balance due under the note to the mortgagee should be paid as the husband's share of the note and one-half of the total fire loss should be paid to the mortgagee and the wife as their interests may appear. The carrier would then be able to proceed against the husband-wrongdoer to recover its loss.

Where equity and law have merged and are at issue, equity ought to prevail.