**David W. OPAT, an individual, and Janice M. Opat, an individual, Plaintiffs,**

v.

**STATE FARM FIRE AND CASUALTY INSURANCE COMPANY, an Illinois corporation, Defendant.**

**Civ. A. No. 80–1131.**

United States District Court,
W. D. Pennsylvania.

July 9, 1982.

---

Charles Skomski, Monessen, Pa., for plaintiffs.

Richard W. DiBella, Pittsburgh, Pa., for defendant.

## MEMORANDUM

McCUNE, District Judge.

We consider a motion for a new trial, filed by plaintiffs, a motion that plaintiffs be permitted to take an appeal in forma pauperis, and a post trial motion filed by defendant that judgment be entered against plaintiffs for $10,955.51, the amount which the defendant paid Mellon Bank to discharge a mortgage covering the real estate which is the subject of this litigation.

The plaintiffs, husband and wife, owned a residence as tenants by the entireties, which was destroyed by fire on the night, or early morning, of August 12, 1979. The defendant insured the premises against loss by fire in what is commonly called a homeowner's policy. The premises were mortgaged to Mellon Bank.

The defendant refused to pay for the loss, alleging that Janice Opat had burned the house intentionally, although defendant paid Mellon the balance of the mortgage debt.

The plaintiffs were separated as the result of domestic trouble, the husband having moved from the premises sometime in June of 1979. The wife remained in the family home with one child.

The trial was bifurcated and the jury was asked to answer one question—Did Janice Opat, or someone acting in concert with her and with her knowledge, intentionally set the fire of August 12, 1979? The Jury answered "Yes" and a judgment was entered for the defendant.

In her case in chief, Janice Opat testified concerning her domestic trouble which she attributed in large part to her affair with her husband's brother, Robert Opat. On the night of the fire she admitted being away from home and in a motel with Robert and her child about three years old. She had left her home at about six o'clock, had met Robert at a carwash, and had gone with him in his vehicle to the motel, where they had spent the night. Janice testified that she knew nothing of the fire until she returned to her home in the morning. She denied leaving the motel during the night.

Both David and Janice, in their testimony, attributed the fire, by inference, to Robert's wife, Marlene Opat, who would understandably be hostile to both Janice and Robert. They testified that a broken radio antenna had been found in their driveway after the fire which they considered to have come from Marlene's car.

Janice also testified that she had found that on August 6, 1979, some six days before the destruction of the property, someone had tried to start a fire at her basement door while she was asleep at home and that her phone had been ringing from time to time under suspicious circumstances because when it was answered there was no response.

The state fire marshal testified that in his opinion, the fire was of incendiary origin but that he could not determine the origin or the cause. A police officer was called by the plaintiffs concerning his investigation of the April 6 fire which was inconclusive according to his testimony.

It appeared that at the close of the plaintiffs' case, they had introduced evidence of incendiary origin, denied starting the fire and cast suspicion on Marlene.

In defense, a private fire investigator gave the opinion that the fire was of incendiary origin and gasoline or kerosene was the agent used. Another investigator testified that David Opat had been given a deadline by Janice of August 9, 1979, by which he was to remove his stereo equipment, the main possession of David, which he was to be given as part of the division of personal property.

A neighbor testified that Janice and she were close friends, that Janice had expressed the wish to her that the house would burn so that she and Robert could buy a Corvette automobile and go to Florida. The witness testified that Robert frequently visited Janice at her home, that the witness was familiar with Robert's car and the sound it made, that the car had driven into Janice's driveway the early morning of August 12, 1979, had left and had returned about an hour later and had left again, that Janice's dog was usually kept in Janice's cellar, but on that night was allowed to run loose and had spent the night in the witness' home.

The defendant convinced the jury that Janice and Robert planned the fire to raise money, planned the August 6 fire to cast suspicion on Marlene, went to the motel to create an alibi, returned during the night where one of them remained in the house long enough to use the agent, the other returned to pick up the accused, and they both then returned to the motel.

No allegation was made that David had any part in the plan, which raises the question whether he is bound by his wife's adverse verdict, or whether he can recover half of the loss. A part of this question is whether defendant can have judgment against him for the money paid to Mellon Bank, or against Janice alone, or against both.

The motion for new trial alleges the following errors in the rulings made, some of which were made at pretrial conference:

1. That the evidence submitted by defendant of the adulterous relationship between Janice and her husband's brother was prejudicial to plaintiffs and denied them a fair trial.

■ The evidence was admissible and was necessarily presented by the plaintiffs in their case in chief. It was elementary that plaintiffs would be asked of their whereabouts the night of the fire. It was obvious that Janice could say that she was not present and her presence in the motel with Robert was her alibi. We had ruled at pretrial conference that the whereabouts of the plaintiffs could be the subject of inquiry by either party, and the relationship of the wife plaintiff with her husband's brother could be the subject of inquiry, as well. Given the fact that the sojourn at the motel was Janice's alibi, it is difficult to conceive of the evidence being excluded, nor could the defendant have been deprived of the evidence had plaintiffs not brought it forth.

2. During the trial, a remark made by Robert Opat, seated in the audience, within the hearing of the jury, was so prejudicial to the plaintiffs that a new trial is required.

■ Robert Opat, who did not testify, but who was in the audience during David's redirect testimony, made a remark that the court did not hear. Counsel for plaintiff heard the remark as calling David a "junkie." There was no motion made for a mistrial. Counsel asked only that we admonish the jury to disregard the remark. This motion was granted and the jury admonished. Counsel cannot now demand a new trial in view of his motion and the granting of his motion. The incident was minor in any event, and does not require a new trial.

3. That error was made in refusing to permit the investigators to say that they had no evidence that implicated the plaintiffs and that plaintiffs had not been charged with the criminal offense of arson.

■ We had ruled at pretrial conference that while the investigators could testify and, if qualified, express opinions on the cause of the fire, they could not state whether anyone had been charged, or not charged, with a crime and they could not state whether they had evidence implicating plaintiffs or not. This ruling is in conformity with established rules of evidence, see *Galbraith v. Hartford Fire Ins. Co.*, 464 F.2d 225 (3d Cir. 1972). *Greenberg v. Aetna Ins. Co.*, 427 Pa. 511, 235 A.2d 576 (1967) (evidence of acquittal of criminal charge of arson held inadmissible).

The remaining errors charged do not merit discussion.

There is one serious issue remaining, i.e., whether the verdict bars recovery of half of the loss by the husband plaintiff as a tenant by the entireties in the real estate. It is apparent from the evidence that the husband plaintiff was not charged with the arson and did not commit it.

As noted previously, David and Janice Opat had separated and David had moved out of the residence in June of 1979. State Farm concedes that at the time of the fire David no longer lived in the house, and that he had no part in the intentional setting of the fire. We are thus faced with the question whether the actions of one insured spouse in burning, or causing to be burned, the insured dwelling, bar the other, innocent insured spouse from recovery under a fire insurance policy. In deciding this question, we must, of course, look to Pennsylvania law.

We join with the Maryland Court of Appeals in observing that this "has been a problem vexing the appellate courts of [a number of] jurisdictions for the past several years." *St. Paul Fire and Marine Insurance Co. v. Molloy*, 291 Md. 139, 433 A.2d 1135, 1139 (1981). It appears, however, that the Pennsylvania Supreme Court has not had the opportunity to address the issue, either recently or in the more distant past. Nor has the Pennsylvania Superior Court decided this precise question. The most recent discussion of Pennsylvania law on this issue was made in 1978 by the United States District Court for the Eastern District of Pennsylvania. In *Mele v. All-Star Insurance Corp.*, 453 F.Supp. 1338 (E.D.Pa.1978), the court relied on the Pennsylvania Superior Court decision in *Bowers Co. v. London Assurance Corp.*, 90 Pa.Super. 121 (1926) and the Washington County Court of Common Pleas decision in *Matyuf v. Phoenix Insurance Co.*, 27 D&C2d 351 (1933). It determined that the "clear albeit somewhat

vintage position of the Pennsylvania courts" bound it to conclude that the innocent spouse was barred by the fraudulent acts of the other if the jury determined that the other was responsible for the fire. *Mele v. All-Star Insurance Corp., supra,* at 1342.

Our own reading of *Bowers v. London Assurance Corp., supra,* does not convince us that it is so clearly on point as to direct a conclusion under the facts of this case. It is true that in *Bowers* the court ruled that "[i]f the insurance is taken in the joint names of two or more persons the general rule prevails and all the assured must join in the action," 90 Pa.Super. at 126, and that "[i]f the action is joint it follows that recovery on the policy is prevented by the fraudulent act of either of the assured whether participated in by the other or not." *Id.* at 127. We find it important, however, that the court in *Bowers* discussed the facts which led to the conclusion that the insurance contract was joint. The insureds named in the policy were "John A. Perry and L. S. Bowers Company as their interests may appear." Bowers Company was a car dealer which sold a car to Perry under a bailment lease which required Perry to insure the car against damage by fire, loss if any payable to Bowers as its interest might appear. As Perry made payments on the car, his interest in it increased and Bowers' interest decreased. The court noted that until final payment had been made, and Perry had obtained the entire interest in the car and Bowers retained no interest, Perry and Bowers "did not have separate and distinct interests in the *policy*—as distinguished from the automobile—which each could enforce by his own separate action irrespective of the rights of his joint assured." 90 Pa.Super. at 124. The court clearly found from the facts that the rights of Perry and Bowers being interrelated, "the policy did not purport to insure the interests of the assured in severalty but jointly, the two interests combined constituting one whole subject of insurance." *Id.* at 125. The policy being joint, the court concluded that Bowers could not bring the action alone, and would be prevented from recovering on the policy if it were estab-

lished that Perry had fraudulently burned the car. The court noted that Bowers could have avoided this result by using a provision similar to a standard mortgage clause which has been held to create a separate contract between the insurance company and mortgagee.

The court in *Mele v. All-Star Insurance Corp., supra,* acknowledged that the interests of the co-insureds in the property in *Bowers* were not the same as the interests of the husband and wife in the case before it. Nevertheless, it reached the conclusion that the *Bowers* rationale applied with the equal force to the situation in that case. We do not have available for review all the facts which the court in *Mele* might have considered in determining that the insurance policy in that case constituted a joint contract. However, to the extent that the ruling was based on the assumption that because the property covered by the policy was jointly held, the policy itself was a joint contract, we must respectfully disagree.

We observe that in *Bowers* the court determined that Perry and Bowers had joint interests in the policy not because they were both named as insureds, nor because they held joint interests in the property insured, but because the specific nature of their joint interests in the property made it clear that "the two interests combined constituting one whole subject of insurance." 90 Pa.Super. at 125. Thus in deciding whether to apply the rule of *Bowers* that the fraud of one insured will bar the recovery by another, non-culpable insured, we must first determine whether the insurance policy was a joint contract.

We note that although the theory of tenancy by the entirety contemplates a "oneness" of husband and wife such that the property is owned by the marriage unit, each spouse possesses an undivided interest in the whole property. The interest of one spouse in the entirety property has been determined to be an insurable interest, see *Shores v. Rabon,* 251 N.C. 790, 112 S.E.2d 556 (1960); 27 A.L.R.2d 1061.

Thus a husband and wife might separately insure their interests in property which they hold by the entirety. It does not follow as a certainty from the mere fact that a policy names as the insured a husband and wife that the policy insures their joint interest rather than their separate interests. Nor does it follow that because the property insured is held jointly, the insurance policy is held jointly as well. "The insurance policy on the entirety property is a personal contract, appertaining to the parties to the contract and not to the thing which is subject to the risk insured against." *Lovell v. Rowan Mutual Fire Ins.*, 302 N.C. 150, 274 S.E.2d 170, 173 (1980). We must, then, examine the insurance policy and the circumstances surrounding it to determine whether the contract should be considered joint.

The rules of contract construction as applied to insurance policies have been stated numerous times. The court must give the words of a policy a reasonable interpretation so as to effectuate the intent of the parties, but ambiguities are to be resolved against the writer of the policy and the presumption favors coverage when a policy provision is unclear. *Papadell v. Harleysville Mutual Casualty Co.*, 411 Pa. 214, 191 A.2d 274 (1963); *Evans v. Baltimore Life Insurance Co.*, 216 Pa.Super. 425, 268 A.2d 155 (1970). The policy we now consider lists as "Insured's Name," "Opat, David W. and Janice M." In the definitions section of the policy it is provided that " 'Insured' means (1) the Named Insured stated in the Declarations of this policy; [and] (2) if residents of the Named Insured's household, his spouse, the relatives of either, and any other person under the age of twenty-one in the care of any insured..." The General Conditions applicable to the policy provide that "[I]n the event of death of the Named Insured, the definition of 'Insured' is modified as follows: (a) the spouse, if a resident of the household at the time of such death..." In our view, these sections identifying and defining the "Insureds" and "Named Insureds" add nothing helpful in determining whether the interests and obligations under the contract are joint or several. (We note, however, that if we were to assume from the estate in the property that the policy was likewise held by the entirety, the clause cited from the General Conditions of the policy would appear to be superfluous.)

The provision which State Farm cites as the basis for refusing payment here, provides that the policy shall be void "in case of any fraud or false swearing by the insured." This clause makes it apparent that the obligation to refrain from fraud is imposed not only on those named as "Insured" in the declarations, but on other relatives and dependents residing in the property. It sheds no light, however, on whether the obligation is imposed jointly or severally. Indeed, in our view, nothing in the policy itself sheds any light on whether the interests of the named insureds are joint or several or whether the obligations of the insureds are joint or several.

■ We have previously noted that we cannot presume from the fact that the property insured is jointly owned that the insurance policy covers the joint interest. At the same time, we agree with the Supreme Court of New Hampshire that "an ordinary person owning an undivided interest in property ... would naturally suppose that his individual interest in the property was covered by a policy which named him without qualification as one of the persons insured." *Hoyt v. New Hampshire Fire Ins. Co.*, 92 N.H. 242, 29 A.2d 121, 123 (1942). We do not believe it necessary to cite specific authority in developing the point that, despite the survival of the estate of tenancy by the entirety, the legal fiction of the "oneness" of husband and wife has largely disappeared. Separate ownership of property, both real and personal, by spouses is commonplace. And one spouse may not be held vicariously liable for the crimes or torts of the other simply because of the existence of the marriage relationship. Given the rules of construction, then, in the present case where there is no specific indication in the contract that the interests and obligations of the "Named Insured" are joint, we find it to be a reasonable interpre-

tation of the policy that the term "insured" in the fraud clause refers to "the insured who (1) is responsible for causing the loss and (2) is seeking to recover under the policy," *Hildebrand v. Holyoke Mutual Fire Ins. Co.*, 386 A.2d 329, 331, (Me.1978), and not jointly to all the insureds.

Having determined that the interests and obligations of the insureds under the policy are several rather than joint, the rule in *Bowers, supra*, is not controlling in this case. The only decided case in Pennsylvania which addresses the specific fact situation here is *Matyuf v. Phoenix Insurance Co., supra*. While this court is bound in diversity cases to follow the law of Pennsylvania as enunciated by the Supreme Court, or, in the absence of a Supreme Court decision by the Superior Court, *Pritchard v. Liggett & Myers Tobacco Co.*, 350 F.2d 479, cert. den. 382 U.S. 987, 86 S.Ct. 549, 15 L.Ed.2d 475 (3d Cir. 1965), we need not follow a decision from a Court of Common Pleas unless it reflects "a sufficient body of nisi prius opinion to form a consensus of legal thought" on the subject. The decision in *Matyuf* being the only opinion on the question, we are confident that there is no consensus of legal thought which would so bind us,[1] and we therefore attempt to "predict" what ruling the highest court in Pennsylvania would make.

■ The considerations which lead us to conclude that the insurance contract may not be presumed to be joint simply because the insured property is held by the entirety, also lead to the conclusion that the innocent spouse should not be precluded from recovery by the fraudulent acts of the culpable spouse. At one time, the complete acceptance of the "oneness" of husband and wife might have required the conclusion that, unless clearly indicated to the contrary, the interests and obligations named in a policy were joint and several. Under the present state of the law in this and other jurisdictions, we believe the reverse is true. Conse-

quently, we hold that David Opat, who was admittedly not involved in the intentional setting of the fire found by the jury to have been committed by Janice Opat, is entitled to recover under the policy to the extent of his interest in the damaged property, that is, one-half of the loss. The trial was bifurcated on the issues of liability and damages. As a result the damages have not yet been liquidated.

■ Finally, we address the counterclaim asserted by State Farm against the plaintiffs in the amount of the payment made by State Farm to the mortgagee of the property, Mellon Bank. We think it is clear that under the standard mortgage clause of the policy State Farm was required to make payment on the mortgage under the circumstances and they thereby either became subrogated to the rights of Mellon Bank, cr received full assignment of the mortgage. In either case, the plaintiffs are now liable to State Farm for the amount paid Mellon Bank on the mortgage, $10,955.51. The mortgage was clearly a joint obligation of both David and Janice Opat. Thus although Janice was separately responsible for the fraud and may therefore not recover under the insurance policy while David may recover for his interest, both David and Janice are liable for payment of the judgment against them on the counterclaim.

The motion for judgment by State Farm against both David and Janice Opat will be granted. Interest must be adjusted on the judgment against both for the payment of the mortgage.

An order follows.

### ORDER

AND NOW, July 7, 1982, it is ordered that the verdict of the jury shall not bar a claim for one-half of the fire loss asserted by the husband. This loss is not yet liquidated.

---

1. We observe that the *Matyuf* opinion written in 1933, remained unpublished until 1962, when it was included in the Reporter at the request of the Superior Court as dealing "with an inter-

esting question not expressly ruled on by any other reported decision in Pennsylvania," 27 D. & C.2d at 366, Editor's Note.

Judgment is entered against both David and Janice Opat for $10,955.51 in favor of State Farm, with interest.

The motion for a new trial for Janice Opat is denied.

The motion that plaintiffs be permitted to appeal in forma pauperis is denied. The judgment entered against David and Janice Opat is entered jointly and severally.