Julie A. ERROR, an individual,
Plaintiff and Appellee,

v.

WESTERN HOME INSURANCE COM-
PANY, a Utah corporation, and Ameri-
can Savings & Loan Association, a
Utah corporation, Defendants and Ap-
pellants.

No. 20238.

Supreme Court of Utah.

Sept. 28, 1988.

Dennis C. Ferguson, Salt Lake City, for
defendants and appellants.

Dale E. Anderson, Salt Lake City, for
plaintiff and appellee.

HALL, Chief Justice:

Insurer Western Home Insurance Com-
pany (Western) appeals a judgment award-
ing insured Julie A. Error (Julie) indemnifi-
cation in her action which was initiated

after Western denied coverage for damages to Julie's home. We affirm.

## I

After Julie initiated this action, the trial court granted American Savings' rule 41(b) motion,[1] disposing of Julie's claim against that defendant. The trial court then ruled in favor of Julie on her claim against Western and entered the following findings and conclusions:

### "FINDINGS OF FACT

#### "I

"Plaintiff, Julia [sic] A. Error and her husband Ray M. Error purchased a house at 2870 West 2960 South, Salt Lake County, Utah in November 1968 as joint tenants.

#### "II

"On November 15, 1976, Plaintiff obtained a 'Decree of Divorce' from Ray M. Error in Salt Lake County, case number D–11233 and the Court made the following judgment in favor of Julia [sic] A. Error:

'4. Plaintiff is awarded the home and real property located at 2870 West 2960 South, Salt Lake City, Utah, subject to the two mortgages presently on said home. Plaintiff shall assume and discharge the two mortgages on the home and real property and hold the defendant harmless from any further obligation thereon.'

#### "III

"From the time of entry of said 'Decree of Divorce' to the present, Plaintiff resided in said house and made all required mortgage and insurance premium payments from her own earnings.

#### "IV

"In August of 1978 Plaintiff and Ray Error were remarried. In April of 1982 Plaintiff and Ray [E]rror were separated. During the period from August of 1978 to April of 1982 Ray Error contributed his earnings to general family expenses and

Plaintiff continued to pay mortgage payments and insurance premium payments from her own earnings and from her own separate account.

" . . . .

#### "VI

"In November 1982 Plaintiff filed for a second divorce from Ray Error and on November 12, 1982 the Court issued a 'Temporary Restraining Order And Order To Show Cause' (Civil No. D83–4586) and on December 16, 1982 an 'Order On Order To Show Cause' which ordered Ray Error to immediately vacate the home and premises and restrained and enjoined him from returning to the premises.

"Ray Error contested the Divorce proceedings claiming an interest in the property.

#### "VII

"From the time Plaintiff and Ray Error purchased the subject house to the time of trial there was no change in the record title to the said property. The insurance policy insuring said property was also continued by the Defendant, Western Home Insurance Company in the name of 'Error, Ray M. and Julie A.'

" . . . .

#### "VIII

"On July 4, 1983 Ray Error entered the said property and deliberately started a fire with the use of a flammable liquid in the bathroom. Ray Error was arrested that night for arson and was booked in the Salt Lake County jail.

"On July 5, 1983 Ray Error returned to the premises with a gun, barricaded himself in the house and held his son Steven hostage for a short time. The police were called. The police fired tear gas into the house in an effort to get Ray Error out. When the police entered the premises they found Ray Error unconscious and he died shortly thereafter.

---

1. Utah R.Civ.P. 41(b).

"IX

"There was, at the time of loss, a policy of insurance issued by Defendant Western Home Insurance Company which insured the Plaintiff against loss to the premises from fire and related damages, costs and expenses.

"X

"Plaintiff submitted a claim to Defendant, Western Home Insurance Company for the losses incurred by her and said claim was denied.

"XI

"The actual and anticipated expenses incurred by Plaintiff to repair the damage to the premises and the related costs and expenses are as follows:

| | |
|---|---:|
| Materials | $ 4,000.00 |
| Labor of Plaintiff and her present husband at $8.00 per hour for 600 hours | 4,800.00 |
| Labor of Plaintiff's son at $4.50 per hour for 120 hours | 540.00 |
| Personal property loss | 987.00 |
| Washing expense | 56.00 |
| Fair rental substitute for 3 months at $400.00 per month | 1,200.00 |
| Additional costs for meals for 3 months | 1,253.00 |
| Miscellaneous | 60.00 |
| Total | $12,896.00 |

"XII

"Plaintiff had no control over the conduct of Ray Error, had no knowledge of his actions in setting the fire and did not misrepresent any fact nor engage in any fraud in either causing the loss or in the submission of the claim for said loss and was without fault in contributing to or causing the loss.

"CONCLUSIONS OF LAW

"I

"Ray Error did have an 'insurable interest' in the property at the time of the loss. The value of Ray Error's interest in the property at the time of loss would be minimal and not more than one-half of the appreciation in value from the date of remarriage in August of 1978 to the date of the second separation in April of 1982 during which time he contributed to family expenses.

"II

"The insurance policy excludes coverage for 'neglect' of the insured. This exclusion is not applicable to Plaintiff as there was no 'neglect' by Plaintiff and she was without fault.

"III

"The insurance policy excludes coverage for 'fraud' but this exclusion is not applicable to Plaintiff as she neither concealed any facts nor committed any fraud.

"IV

"The intentional, criminal acts of Ray Error bar any recovery by Ray Error or his estate from Defendants, Western Home Insurance Company.

"V

"Ray Error's interest in the property at the time of loss is minimal and speculative and there was no evidence establishing any value whatever for the 'insurable interest' of Ray Error at the time of loss and is therefore zero.

"VI

"The interests of Ray Error and Julie Error in the property were divisible or separable and were not joint.

"VII

"The responsibility or liability for the fraud (arson) in this case is several and separate and not joint and the fraud of Ray Error can not [sic] be attributed to Plaintiff the innocent spouse. *Delph vs. Potomac Insurance Company* [95 N.M. 257], 620 P.2d 1282 (N.Mex.1980); *Commercial Union Insurance Company vs. State Farm Fire and Casualty Co.*, 546 F.Supp. 543 (Colorado 1982); *St. Paul Fire and Marine Insurance Co. vs. Molloy* [291 Md. 139], 433 A.2d 1135 (Md.1981); *Fuston vs. National Mutual Insurance Co.*, 440 N.E.2d 751 (Indiana 1982); *Richards vs. The Han-*

*over Insurance Company*, [250 Ga. 613], 299 S.E.2d 561 (Georgia 1983).

"VIII

"Plaintiff is entitled to judgment and judgment shall be entered for Plaintiff in the sum of $12,896.00 plus prejudgment interest at the statutory rate of 10% per annum from July 4, 1983 to the date of entry of Judgment, plus costs in the amount of $67.69 and interest on the entire judgment at 12% per annum until paid."

Judgment was entered in accordance with these findings and conclusions, and Western appeals.

*II*

Western's first and principal point is that the judgment in favor of Julie was improper because her loss was "caused totally by the intentional conduct of [her] co-insured husband." Specifically, Western argues that where coinsureds have joint interests

in property, an innocent coinsured cannot recover on a fire insurance policy following an act of arson by the other.

Despite Western's claim that this is the "traditional rule," we are not convinced, particularly since several of the cases Western cites to support its argument have been rejected, limited, overruled, or reversed.[2] Rather, the rule of law in a majority of jurisdictions is that an innocent insured is not necessarily precluded as a matter of law from recovering on a fire insurance policy because a coinsured intentionally destroyed the insured premises.[3] The rationales behind this rule vary, but fall into three broad—and sometimes overlapping—categories. Some jurisdictions focus upon the insured's property interest.[4] Others focus upon the insured's obligations under the insurance policy.[5] The rationale that most appeals to our sense of reason and fairness, and the rationale we adopt today, is that which focuses upon the responsibility for the fraudulent act.[6]

2. *Mele v. All–Star Ins. Corp.*, 453 F.Supp. 1338 (E.D.Pa.1978), *rejected in part by Opat v. State Farm Fire & Casualty Ins. Co.*, 542 F.Supp. 1321, 1324–25 (W.D.Pa.1982), *aff'd*, 755 F.2d 922 (3d Cir.1984) (rejecting *Mele* assumption that because property covered by policy is jointly held, policy itself is a joint contract); *Monaghan v. Agricultural Fire Ins. Co.*, 53 Mich. 238, 18 N.W. 797 (1884), *limited by Morgan v. Cincinnati Ins. Co.*, 411 Mich. 267, 276, 307 N.W.2d 53, 54–55 (1981); *Lovell v. Rowan Mut. Fire Ins. Co.*, 46 N.C.App. 150, 264 S.E.2d 743 (1980), *rev'd*, 302 N.C. 150, 274 S.E.2d 170 (1981); *Short v. Oklahoma Farmers Union Ins. Co.*, 619 P.2d 588 (Okla.1980); *Jones v. Fidelity & Guar. Ins. Co.*, 250 S.W.2d 281 (Tex.Civ.App.1952), *overruled, Kulubis v. Texas Farm Bureau Underwriters Ins. Co.*, 706 S.W.2d 953, 955 (Tex.1986); *Bridges v. Commercial Standard Ins. Co.*, 252 S.W.2d 511 (Tex.Civ.App.1952) (relying on *Jones*, 250 S.W. 2d 281), *overruled in substance, Kulubis*, 706 S.W.2d at 955; *Rockingham Ins. Co. v. Hummel*, 219 Va. 803, 250 S.E.2d 774 (1979); *Cooperative Fire Ins. Ass'n v. Domina*, 137 Vt. 3, 399 A.2d 502 (1979).

3. *See generally* 5 J. Appleman & J. Appleman, *Insurance Law & Practice* § 3113 (5th ed. 1970 & Supp.1988); 18 G. Couch, *Cyclopedia of Insurance Law* § 74:676 (2d ed. 1983 & Supp.1987); 45 C.J.S. *Insurance* 822b (1946 & Supp.1988); Annotation, *Right of Innocent Insured to Recover Under Fire Policy Covering Property Intentionally Burned by Another Insured*, 11 A.L.R.4th 1228 (1982 & Supp.1987).

4. *Hosey v. Seibels Bruce Group, S.C. Ins. Co.*, 363 So.2d 751 (Ala.1978); *Hoyt v. New Hampshire Fire Ins. Co.*, 92 N.H. 242, 29 A.2d 121 (1942); Annotation, *Fraud, False Swearing or Other Misconduct of Insured as Barring Recovery on Property Insurance by Innocent Coïnsured*, 24 A.L.R. 3d 450 (1968 & Supp.1987).

5. *Opat*, 542 F.Supp. 1321; *Republic Ins. Co. v. Jernigan*, 753 P.2d 229 (Colo.1988); *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 299 S.E.2d 561 (1983); *St. Paul Fire & Marine Ins. Co. v. Molloy*, 291 Md. 139, 433 A.2d 1135 (1981); *Lovell*, 302 N.C. 150, 274 S.E.2d 170; *Ryan v. M.F.A. Mut. Ins. Co.*, 610 S.W.2d 428 (Tenn.Ct.App.1980).

6. *Howell v. Ohio Casualty Ins. Co.*, 130 N.J.Super. 350, 327 A.2d 240 (1974); *accord Steigler v. Insurance Co. of N. Am.*, 384 A.2d 398 (Del. 1978); *Auto–Owners Ins. Co. v. Eddinger*, 366 So.2d 123 (Fla.Dist.Ct.App.1979); *Economy Fire & Casualty Co. v. Warren*, 71 Ill.App.3d 625, 28 Ill.Dec. 194, 390 N.E.2d 361 (1979); *American Economy Ins. Co. v. Liggett*, 426 N.E.2d 136 (Ind.Ct.App.1981); *Hildebrand v. Holyoke Mut. Fire Ins. Co.*, 386 A.2d 329 (Me.1978); *Morgan*, 411 Mich. 267, 307 N.W.2d 53; *Delph v. Potomac Ins. Co.*, 95 N.M. 257, 620 P.2d 1282 (1980); *Winter v. Aetna Casualty & Sur. Co.*, 96 Misc.2d 497, 409 N.Y.S.2d 85 (Sup.Ct.1978); *McCracken v. Government Employees Ins. Co.*, 284 S.C. 66, 325 S.E.2d 62 (1985); *Kulubis*, 706 S.W.2d 953; *Hedtcke v. Sentry Ins. Co.*, 109 Wis.2d 461, 326 N.W.2d 727 (1982); *cf. Shaw v. Jeppson*, 121 Utah 155, 162, 239 P.2d 745, 748 (1952) (joint

■ When the responsibility or liability for the fraud is separate rather than joint, an insured's fraud cannot be attributed or imputed to an innocent coinsured. As noted by the Wisconsin Supreme Court when it adopted the same rationale:

Courts adopting the modern rule recognize the need to deter arsonists but also recognize the fundamental principle of individual responsibility for wrongdoing. A legal principle denying coverage to an innocent party implicitly imputes the guilt of the arsonist to the innocent insured. ... An absolute bar to recovery by an innocent insured is particularly harsh in a case in which the arson appears to be retribution against the innocent insured. Having lost the property, the innocent insured is victimized once again by the denial of the proceeds forthcoming under the fire insurance policy. Focusing on the nature of the individual responsibility for wrongdoing, we hold that the obligations of the insurer under the insurance policy in this case should be considered several as to each person insured.[7]

■ In this case, the trial court concluded that liability for the fraud—arson—was separate rather than joint and that the fraud could not be attributed or implied to Julie, the innocent coinsured. It follows, then, that Ray's fraud does not void the policy as to Julie.

### III

■ Western's second point is that if Julie is entitled to recover, her recovery must be limited to one-half of the damages to the insured real and personal property. Western argues that if the insurance policy is treated as creating several rights, amounts owing under the policy must likewise be allocated. Generally speaking, this is a valid argument. However, when applied in this instance, the argument does not change the trial court's result.

promisees having severable rights may enforce rights separately: "It seems obvious that one who has a right violated, should not be prevented from redress merely because another, who may be disqualified or unavailable in the suit, may share the right.").

After establishing the facts, the trial court concluded (1) that Ray's *economic interest* in the property was minimal, and (2) that while Ray had an *insurable interest,* there was no evidence to establish its value. Ray's *rights* under the insurance contract, then, were minimal. It follows that the percentage of insurance proceeds that Ray's estate might recover—that may be deducted from Julie's recovery—is also minimal.

Western disputes the trial court's conclusions. It argues that a conclusion that Ray's economic interest was minimal is legally inconsistent with a conclusion that he had an insurable interest. Western relies upon Utah Code Ann. § 31–19–4 (1974) (repealed 1985) to support its argument:

(1) No contract of insurance on property or of any interest therein or arising therefrom, shall be enforceable except for the benefit of persons having an insurable interest in the things insured.

(2) "Insurable interest" as used in this section means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage.

Western claims that Ray's "insurable interest" must have been a "substantial economic interest," thus justifying a division of amounts owing under the policy. We disagree.

In *Hill v. Safeco Insurance Co.,*[8] this Court quoted from G. Couch, *Cyclopedia of Insurance Law* § 24.13 (2d ed. 1960), as follows:

Generally speaking, a person has an insurable interest in property whenever he would profit by or gain some advantage by its continued existence and suffer some loss or disadvantage by its destruction. If he would sustain such loss, it is immaterial whether he has, or has

7. *Hedtcke,* 326 N.W.2d at 740 (citation omitted).

8. 22 Utah 2d 96, 448 P.2d 915 (1969).

not, any title in or lien upon, or possession of, the property itself.

... Any interest in property, legal or equitable, qualified, conditional, contingent, or absolute, or merely the right to use the property, with or without the payment of rent, is sufficient.[9]

Under this definition, Julie's ownership of the property gave Ray an insurable interest since the property's continued existence could possibly provide him with a more advantageous divorce settlement. At the very least, upon his second marriage to Julie, Ray gained an equitable interest in the property sufficient to constitute an insurable interest. This determination is not inconsistent with the trial court's conclusion that Ray's economic interest was minimal since having an economic interest is not a prerequisite to having an insurable interest. But while Ray had an insurable interest, no evidence was offered to establish the value of that interest. Thus, we find no error in the trial court's conclusion that the value of Ray's insurable interest was "zero."

Likewise, it cannot be said that the trial court erred in concluding that Ray's economic interest in the property was minimal. While Ray contributed to family expenses during his second marriage to Julie, this does not refute the trial court's conclusion that his interest was minimal and limited to one-half of the property's appreciation during the time of the remarriage, particularly considering the uncontroverted testimony that the 1976 divorce decree granted title to the property to Julie and that she paid out of her personal earnings all mortgage and insurance payments on the property from the time of the 1976 divorce forward. Based on the facts presented, we cannot say that the trial court erred.

Western also claims that the evidence establishes that the personal property destroyed by the fire was jointly owned and that Julie is entitled to recover only one-half the value of the destroyed personalty. Western fails to cite the record to support its claim, and our review indicates that there is no evidence to suggest that the personalty was other than Julie's.[10] Since Ray was not living at the property at the time of the fire and was forbidden by court order from going there and since no evidence or testimony was offered suggesting that Julie's claim was for lost property in which Ray had an interest, we may presume that Julie's claim was for the value of her personal property alone. Indeed, Western did not even raise the point until after the proceedings in a post-trial memorandum. The argument is without merit.

## IV

Western's final point is that the trial court erred by awarding Julie damages for "fair rental value" and additional living expenses and applied an improper standard for determining the value of labor used to repair Julie's home.

First, Western contends that its policy only provided for recovery of "fair rental value" under the following circumstances: "2. Fair Rental Value. If a loss covered under this Section makes that part of the residence premises rented to others or held for rental by you uninhabitable, we cover its fair rental value." Western argues that since no part of Julie's home was rented or held for rental, the trial court was not permitted to grant Julie fair rental value for the home.

■ Julie concedes that she is not entitled to an award for lost rent under the policy. She claims that the $1,200 awarded was for the loss of use of her home during the period when it could not be occupied. Western's policy provides, in pertinent part: "1. Additional Living Expense. If a loss covered under this Section makes the residence premises uninhabitable, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living." Julie testified that after the fire, she had to live in her trailer, which was located in her backyard. Under these circumstances, the

---

9. *Id.* at 98 n. 2, 448 P.2d at 916 n. 2.

10. *Trees v. Lewis,* 738 P.2d 612, 612–13 (Utah 1987); R. Utah S.Ct. 24(a)(9).

trial court was justified in awarding Julie additional living expenses. Otherwise, Western would unfairly benefit from the fact that Julie happened to own alternate accommodations that could have been used for other purposes.[11]

■ Second, Western contends that the trial court's award of additional living expenses for increased meal expenses was erroneously based upon Julie's estimate of those expenses and were awarded despite Julie's failure to produce receipts. Although Julie's trailer contained a butane stove, she testified that the trailer had inadequate cooking facilities and that she had to eat at restaurants. She then gave an estimate of the cost of these meals less the amount she would have normally spent on food for the period of time in question. Since Western offered no evidence to dispute Julie's testimony, we hold that her estimates were sufficient proof of additional meal expenses to support the trial court's verdict.[12]

■ Third, as indicated above, the trial court awarded Julie damages for labor required to repair her home by multiplying the hours expended by her, her present husband, and her son by their respective hourly wages at their then present jobs. Western now contends that applying such a measure of damages was error. What Western fails to point out is that it obtained estimates for the cost of making repairs to Julie's home and that when Julie attempted to offer these estimates into evidence, Western objected to their admission on the ground that they did not represent "the actual amount of money spent ... to repair the house." Given these facts and the fact that Julie was unable to have her home professionally repaired, Western is estopped from claiming that the trial court erred in calculating Julie's damages; to rule otherwise would in effect allow recovery in an amount sufficient to have a home professionally repaired only by those with financial resources to professionally repair their damaged property prior to recovery.

The judgment of the trial court is affirmed.

DURHAM, J., concurs.

ZIMMERMAN, Justice: (concurring).

I join in the Chief Justice's opinion, which therefore commands a majority of this Court. I write only to comment on a troubling fact not expressly mentioned by the Chief Justice.

In his brief, appellant's counsel asserted that the traditional rule in other jurisdictions disallows any recovery by a spouse if the other spouse intentionally caused the loss. To support this claim, he cited several cases. Appellee's counsel has pointed out, however, that this rule is and has been for some time a minority position and that it is steadily falling from favor. In addition, appellee's counsel informs us that most of the supposedly supporting decisions relied on by appellant's counsel have been overruled or otherwise departed from within their own jurisdictions. *See* footnote 2 of the Chief Justice's opinion.

All counsel filing briefs with this or any other court owe the court a duty to assure that stated propositions of law are correct and that cases cited are still good authority and are properly used. *See* Rules of Professional Conduct of the Utah State Bar, rule 3.3 (effective Jan. 1, 1988). I note this particular instance of questionable statements of law and questionable use of authority as a reminder to all lawyers of their obligation of candor toward the tribunal, an obligation that should not be subordinated to the interests of zealous advocacy.

HOWE, Associate Chief Justice: (concurring in the result).

I concur in the result but do so for reasons more basic than those employed in the majority opinion. I rest my concurrence on the simple fact that the plaintiff had been awarded the real property in the 1976 divorce. Her subsequent remarriage to Mr. Error did not give him any ownership in that property. Although he sought to be

---

11. *See* G. Couch & R. Anderson, *Cyclopedia of Insurance Law* § 54:182 (2d ed. 1983).

12. *See Richards,* 250 Ga. at 616, 299 S.E.2d at 564.

awarded an interest in the real property in the second divorce, he died before his claim was adjudicated, leaving the plaintiff as the sole owner of the property at the time of the fire. While Mr. Error's name appeared on the policy as one of the insureds, this designation was carried over from a time before the first divorce when the property was jointly owned. Since he had no ownership in the real property, did not reside there at the time of the fire, and had no "lawful and substantial economic interest," § 31–19–4(2), the designation of Mr. Error as an insured should be disregarded as surplusage, allowing the plaintiff to recover the full amount of her loss.

STEWART, J., concurs in the concurring opinion of HOWE, Associate C.J.