**ALLSTATE INSURANCE COMPANY, an Illinois corporation, Plaintiff–Appellant,**

v.

**Richard WORTHINGTON, individually and as guardian ad litem of Kaycee Lynn Kimmel, Kristopher Dean Kimmel and Charlee Karena Kimmel; Karen Worthington, individually and as guardian ad litem of Kaycee Lynn Kimmel, Kristopher Dean Kimmel and Charlee Karena Kimmel; David Alan Roth, individually and as guardian ad litem of Kaycee Lynn Kimmel, Kristopher Dean Kimmel and Charles Karena Kimmel; Kelsey Kyle Kimmel, Nancy Ravera and Jae Lowder, Defendants–Appellees.**

No. 93–4127.

United States Court of Appeals, Tenth Circuit.

Jan. 30, 1995.

that the discretionary function exception to the FTCA bars Plaintiff's lawsuit.

1006

Robert G. Wright (Gary L. Johnson, also of Richards, Brandt, Miller & Nelson, with him on the briefs), Salt Lake City, UT, for plaintiff-appellant.

Colin King (Edward B. Havas and Alan W. Mortensen, also of Wilcox, Dewsnup & King, with him on the brief), Salt Lake City, UT, for defendants-appellees.

Before SEYMOUR, Chief Judge, LOGAN, Circuit Judge, and DAUGHERTY, District Judge.*

LOGAN, Circuit Judge.

Allstate Insurance Company filed this federal diversity action for a declaratory judgment, naming as defendants its insureds in a homeowner's policy and the parties suing those insureds in a Utah state court, seeking a determination that it had no duty under a homeowner's insurance policy to defend and indemnify Karen Worthington · Brown (Brown) and her ex-husband, Richard Worthington (husband). The suit arose out of Richard Worthington's kidnapping of hostages and fatal shooting of a nurse. Brown had .been sued in state court by victims and their survivors on claims that she had negligently entrusted weapons to her husband and failed to warn the potential victims. On

---

* The Honorable Frederick A. Daugherty, Senior United States District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

appeal, Allstate asserts that summary judgment for defendants was improper because (1) the insurance policy unambiguously provided that because the husband's intentional acts were not covered under the policy Brown's negligent acts also were not covered; and (2) Brown's actions or omissions did not constitute an "accident" under terms of the policy.[1]

## I

Brown underwent a tubal ligation at Alta View Hospital in Sandy, Utah, in July 1989. Her husband did not approve of the procedure, and over the following two years exhibited growing resentment and hostility toward the doctor and the staff at Alta View Hospital. The allegations in the state court complaints were that, as a precaution, Brown removed all of her husband's firearms from their residence; but, on the eventful day, when her husband demanded that she give him the guns, she did so. Brown allegedly knew her husband planned to go to the hospital and kill the doctor who had performed the tubal ligation, but she did not try to warn her doctor or the Alta View Hospital. Her husband did take firearms and a bomb he had constructed to the Alta View Hospital, where he took hostages and shot and killed a nurse, Karla Roth.

Karla Roth's husband and her children brought suit in Utah state court against both Brown and her husband. The Roths alleged that Brown "negligently and/or recklessly" breached a duty to warn the potential victims or the proper authorities and the failure contributed to Karla Roth's death.[2] I R. 78. Subsequently others sued Brown for severe emotional distress and other injuries based upon theories of negligence in returning weapons to her husband and negligently or recklessly failing to warn the potential victims or the proper authorities.

Brown requested that Allstate defend her in the state negligence suits under a homeowner's policy in effect at the time. Allstate then filed this declaratory judgment action in the federal district court, claiming that it had no duty to defend and indemnify either Brown or her husband against the state tort claims. In considering cross motions for summary judgment, the court held that the criminal act exclusion in the policy unambiguously excluded coverage for the husband's acts. The district court held, however, that the term "an insured" as used in the intentional and criminal exclusion clauses was ambiguous as to whether the husband's criminal and intentional acts excluded indemnification for the wife's negligent acts. II Appellant's App. 439–40. Alternatively, it found that even if the intentional and criminal exclusionary clauses were not ambiguous as to coverage for the wife's alleged negligence, such preclusion would violate Utah substantive law that policies be interpreted based upon principles of individual responsibility. *Id.* at 440, 453. Thus, it granted summary judgment against the insurance company with respect to coverage for Brown, and only that determination is at issue in this appeal.

## II

■ We review the grant of summary judgment de novo, applying the same standards as the district court. *Utah Power and Light Co. v. Federal Ins. Co.*, 983 F.2d 1549, 1553 (10th Cir.1993). If, as here, there are no genuine issues of material fact, we determine whether the district court correctly applied the substantive law of Utah. *See APC Operating Partnership v. Mackey*, 841 F.2d 1031, 1033 (10th Cir.1988).

■ Allstate first argues that the district court erred in finding the insurance contract ambiguous. Allstate asserts that as a coinsured of her husband the contract

---

1. Allstate also argues that the "innocent coinsured" case law does not afford coverage. *See Error v. Western Home Ins. Co.*, 762 P.2d 1077 (Utah 1988). Because of our decision on the other points we need not, and do not, address this contention challenging the district court's alternative finding.

2. Brown moved for summary judgment in the state suit, alleging that she had no duty to Karla Roth. The district court of Utah denied the motion, stating that it could not be concluded as a matter of law that she owed no duty to Karla Roth. Brown petitioned the Utah Supreme Court for relief from the denial of her motion; the Utah Supreme Court denied the petition.

clearly excluded Brown's acts or omissions from coverage. As with any question of contract interpretation we examine closely the language of the particular contract. We apply Utah law, which provides that insurance policies are interpreted under general contract principles. *Bergera v. Ideal Nat'l Life Ins. Co.*, 524 P.2d 599, 600 (Utah 1974); *see also Utah Power and Light Co.*, 983 F.2d at 1553. Whether a contract is ambiguous is a question of law to be determined by this court. *See Alf v. State Farm Fire and Casualty Co.*, 850 P.2d 1272, 1274 (Utah 1993); *Stegall v. Little Johnson Assocs.*, 996 F.2d 1043, 1048 (10th Cir.1993). Ambiguities in an insurance contract are construed against the insurer. *Utah Farm Bureau Mut. Ins. Co. v. Orville Andrews & Sons*, 665 P.2d 1308, 1309 (Utah 1983); *see also Royal College Shop, Inc. v. Northern Ins. Co.*, 895 F.2d 670, 674 (10th Cir.1990). "Under Utah law, an insurer must use explicit language if it intends to limit coverage by an exclusion." *United States Fidelity & Guar. Co. v. Sandt*, 854 P.2d 519, 524 (Utah 1993).

The liability section of the policy provides in part:

### SECTION II—FAMILY LIABILITY AND GUEST MEDICAL PROTECTION

Coverage X

**Family Liability Protection**

**Losses We Cover:**

Subject to the terms, limitations and conditions of this policy, **Allstate** will pay damages which *an insured* person becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an accident and covered by this part of the policy.

We may investigate or settle any claim or suit for covered damages against *an insured* person. If *an insured* person is sued for these damages, we will provide a defense with counsel of our choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

**Losses We Do Not Cover:**

1. **We** do not cover **bodily injury** or **property damage** resulting from:

 a) An act or omission intended or expected to cause **bodily injury** or **property damage**. This exclusion applies even if the **bodily injury** or **property damage** is of a different kind or degree, or is sustained by a different person or property, than that intended or expected; or

 b) An act or omission committed by *an insured* person while insane or while lacking the mental capacity to control his or her conduct or while unable to form any intent to cause **bodily injury** or **property damage**. This exclusion applies only if a reasonable person would expect some **bodily injury** or **property damage** to result from the act or omission.

2. **We** do not cover **bodily injury** or **property damage** resulting from:

 a) A criminal act or omission; or

 b) An act or omission which is criminal in nature and committed by *an insured* person who lacked the mental capacity to appreciate the criminal nature or wrongfulness of the act or omission or to conform his or her conduct to the requirements of the law or to form the necessary intent under the law.

This exclusion applies regardless of whether *the insured* person is actually charged with, or convicted of, a crime.

I Appellant's App. 227–28 (bold type in original; other emphasis added).

The first paragraph of the liability section, by its terms, provides coverage to "an insured person." The particular exclusionary clauses on which Allstate relies, however, do not include any reference to "an insured" or "any insured," *see id.* ¶¶ 1(a) and 2(a), although the clauses excluding coverage of acts or omissions while insane or lacking capacity to control conduct do explicitly refer to "an insured person". *See id.* ¶¶ 1(b) and 2(b). Finally, the criminal act clause refers to "the insured person" in its final sentence.

In reading these clauses as a whole, we cannot tell whether the intentional act and criminal act exclusions are intended to exclude coverage to *all* insureds based on intentional acts by *an* insured. The exclusions merely state that "we do not cover bodily

injury or property damage resulting from an act or omission intended or expected to cause bodily injury or property damage...." If we read the "an" in the first paragraph of the "Losses We Cover" section as meaning "any insured," it appears that an insured or any insured *is* covered for liability for bodily injury or property damage unless that injury or damage resulted from an act or omission intended or expected to cause bodily injury or property damage. The exclusionary clauses in question, ¶¶ 1(a) and 2(a), do *not* explicitly state whether the triggering act or omission must be performed by "the insured," by "any insured," or by "an insured."

Limitations on insurance coverage must be effected through an exclusion clause with language that clearly identifies the scope of the limitation to the reasonable purchaser of insurance. *Draughon v. CUNA Mut. Ins. Soc'y.*, 771 P.2d 1105, 1108 (Utah App.1989). Here, the exclusion clause does not clearly identify whether the intentional act or omission by one insured would preclude coverage for related negligence by another insured. In fact, the clause can be read as excluding coverage to any insured for injuries intentionally caused by a noninsured.

We also note that ¶¶ 1(b) and 2(b) refer to acts or omissions by "an insured," and the final sentence of ¶ 2 refers to "the insured." These clauses are different from those in the cases relied upon by Allstate, in which the use of "an insured" rather than "the insured" in the exclusionary clause itself was held to prevent coverage for injury caused by the intentional acts of one insured, when a suit was brought against a coinsured on a theory of negligence. *See, e.g., Allstate Ins. Co. v. McCranie,* 716 F.Supp. 1440, 1447–49 (S.D.Fla.1989), *aff'd sub nom. Allstate Ins. Co. v. Manning,* 904 F.2d 713 (11th Cir. 1990); *Allstate Ins. Co. v. Gilbert,* 852 F.2d 449, 454 (9th Cir.1988); *Allstate Ins. Co. v. Foster,* 693 F.Supp. 886, 889 (D.Nev.1988); *Allstate Ins. Co. v. Roelfs,* 698 F.Supp. 815, 822 (D.Alaska 1987); *State Farm Fire and Cas. Co. v. Davis,* 612 So.2d 458, 466 (Ala. 1993). All of these cases dealt with language

that excluded coverage to "an insured," which the court read as "any insured." We do not know why the Allstate policies differ. But we must deal with the particular policy and the specific language at issue before us. In the instant case the applicable exclusion clauses do not use the term "an insured", "any insured," or even "insured." [3]

■ Allstate points out its "joint obligations clause," which reads "[t]he terms of this policy impose joint obligations on persons defined as an insured person. This means that the responsibilities, acts and failures to act of a person defined as an insured person will be binding upon another person defined as an insured person," I Appellant's App. 26 (bold in original). But Allstate does not urge that this clause renders unambiguous the pertinent liability exclusion clauses. Nevertheless, we considered this argument because another case relied on it. *See Allstate Ins. Co. v. McCranie,* 716 F.Supp. at 1448 (citing *Allstate Ins. Co. v. Childs,* No. 87–1055–Civ–ORL 18 (M.D.Fla. July 7, 1988)). We believe, based on the placement of the joint obligations clause in the policy, that the provision refers to obligations to pay premiums, to make timely claims, etc., and that in any event a reasonable insured would not understand a "joint obligations" clause to exclude liability coverage for all insureds when coverage was excluded for one insured.

■ Although we reason differently, we agree with the district court's determination that the policy was ambiguous as to whether Allstate had a duty to defend and indemnify Brown when her coinsured husband was not covered because he engaged in an intentional or criminal act excluded by the policy. Based on Utah law that contracts of insurance are to be construed in favor of the insured, particularly exclusionary clauses, we hold that Allstate has a duty to defend suits alleging Brown's negligence and, if liability is imposed, to indemnify Brown even though her coinsured is denied coverage because of his intentional or criminal acts.

---

3. Many cases defendants rely on found policies ambiguous because of severability clauses, and we note that the policy in question does not contain a severability clause. Because we have ruled the pertinent clauses to be ambiguous for other reasons, however, we need not address the severability clauses.

In so holding, we also reject Allstate's argument that we should look to the "underlying cause of the injury" to determine whether Brown is covered. Allstate cites *Gilbert*, 852 F.2d 449, and *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 443 N.W.2d 734 (1989), for the proposition that if injuries and damages arise from one insured's intentional or criminal conduct, the insurance company has no obligation to indemnify or defend any coinsured who is sued on a negligence theory. *Gilbert* and *Freeman* are distinguishable in that their results were based in part on the "an insured" language in the exclusion portion of the policy. *Freeman* also relied in part upon cases involving vehicle accidents in which insureds sought to have the insurer defend under a homeowner's policy. Such cases, we believe, involve a different concept than the instant case. It seems logical that if a homeowner's policy excludes coverage for the use of automobiles, the negligent entrustment of automobiles is derivative, and there should be no coverage. Negligent entrustment of weapons and failure to warn are not derivative in the same way.

In any event, our review indicates that the Utah courts have not specifically adopted nor rejected the view that negligent acts or omissions connected to intentional acts of other insureds are never covered by homeowner's liability policies. Therefore, based on the Utah policies of construing exemptions against the insurance company and of focusing on individual responsibility, *see Error v. Western Home Ins. Co.*, 762 P.2d 1077 (Utah 1988), we believe the district court correctly focused on the cause of action against the insured for whom the company is attempting to deny coverage—here, Brown's negligence. *See Catholic Diocese v. Raymer*, 251 Kan. 689, 840 P.2d 456, 461 (1992) (looking to specific theory of liability alleged rather than underlying cause of injury to determine insurance coverage). If Allstate wants its homeowner's insurance policies to exclude coverage for all insured persons for an excluded act by any insured person, it can do so by careful drafting.

### III

■ Finally, Allstate asserts that Brown's actions or omissions did not constitute an "accident." The policy provides "[s]ubject to the terms, limitations and conditions of this policy, Allstate will pay damages which an insured person becomes legally obligated to pay because of bodily injury or property damage arising from an accident and covered by this part of the policy." I Appellant's App. 44 (bold in original). Allstate contends that the allegations against Brown do not constitute an "accident" under the policy because her alleged negligence is not the action that actually caused Karla Roth's death or the other injuries, citing *Mutual of Enumclaw v. Wilcox*, 123 Idaho 4, 843 P.2d 154 (1992). In that case a woman was sued for her negligence in failing to warn potential victims of her ex-husband's propensity to sexually molest children. The Idaho Supreme Court held the wife was not entitled to coverage because her conduct was not the conduct that caused the injuries. Allstate's "no accident" argument goes too far we believe; it would seem to relieve the insurer from providing a defense to any suit brought against a nonacting insured—e.g., when husband inadvertently dropped a substance on a walkway that caused injury and the injured party sues both insured spouses. As stated above, we believe Utah would more likely follow the courts that look to the actual allegations of negligence and not the "underlying actions."

Further, Utah has adopted a broad definition of accident in accidental death policies. *Winchester v. Prudential Life Ins. Co. of America*, 975 F.2d 1479, 1487 (10th Cir.1992) (Utah courts apply the "less strict standard of defining 'accidental' as a result that was not reasonably foreseeable even if the means causing the result was foreseeable or even intentional." (citation omitted)). The Utah court also has noted that in a liability policy, "courts have generally held that 'accident' includes results negligently caused by the insured." *Hoffman v. Life Ins. Co. of N. America*, 669 P.2d 410, 416 n. 2 (Utah 1983).

■ We AFFIRM the district court's holding that Allstate has a duty to defend and, if necessary, indemnify its insured, Karen Worthington Brown, in the suits that claim she negligently entrusted weapons and

negligently failed to warn others of her husband's potential dangerousness.

DAUGHERTY, District Judge, dissenting.

I must respectfully dissent. As indicated in the majority opinion, the applicable section in the policy at issue in the case at bar covers "damages which an insured person becomes legally obligated to pay because of bodily injury or property damage *arising from an accident* ..." (emphasis added). The section specifically excludes coverage for injuries resulting from "[a]n act or omission intended or *expected* to cause bodily injury or property damage. This exclusion applies even if the bodily injury or property damage is of a different kind or degree, or is sustained by a different person or property, than that intended or expected ..." (emphasis added). It is my opinion that the injuries at issue in the lawsuit against Karen Worthington could not be considered to have arisen from an "accident" in any logical or reasonable sense of the word, whether one looks to the conduct that caused the injury, as did the Idaho Supreme Court in *Mutual of Enumclaw v. Wilcox*, 123 Idaho 4, 843 P.2d 154 (1992), or the allegations asserted against Karen Worthington herself.

The word "accident" is defined by Webster's Unabridged Dictionary as "an event or condition occurring by chance or arising from unknown or remote causes; lack of intention or necessity; an unforeseen, unplanned event or condition ..." Webster's Third New International Dictionary 11 (1981). Black's Law Dictionary states that the word "accident" denotes "any unexpected personal injury resulting from any unlooked for mishap or occurrence ... An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event.... A more comprehensive term than 'negligence,' and in its common signification the word means an unexpected happening without intention or design." Black's Law Dictionary 15 (6th ed. 1990). An insurance law treatise defines the concept of "accidental" as "happening by chance or unexpectedly taking place, not according to the usual course of things; fortuitous; befalling by chance out of the regular course of things; ..." Couch on Insurance 2d (Rev. ed.)

§ 41:19. The Utah Supreme Court has stated that "a person is a victim of an accident when, from the victim's point of view, the occurrence causing the injury or death is not a *natural and probable* result of the victim's own acts." *Hoffman v. Life Insurance Co. of North America*, 669 P.2d 410, 416 (Utah 1983).

The above definitions consistently define accident in the same general terms. It is apparent that when such definitions are applied to the facts of the case at bar, neither the results flowing from the conduct of Richard Worthington, the perpetrator of the crime, or the conduct of his then wife Karen Worthington should be properly considered accidental.

Applying the rationale used in the *Enumclaw* case cited above, the focus is placed on the actions which actually cause the underlying injury, in this case the deliberate and intentional criminal conduct of Richard Worthington. It is undisputed that Richard Worthington's intentional conduct is not covered by the homeowner's policy and, under the theory of *Enumclaw*, though Karen Worthington did not commit the acts which caused the injuries, the homeowner's policy should provide no coverage to her as well. I find such an approach to be well-reasoned and sound, and disagree with the majority that such approach would necessarily relieve an insurer from providing a defense to any nonacting insured.

In any event, I am also of the opinion that the allegations made against Karen Worthington individually do not constitute the occurrence of an accident pursuant to the terms of the Allstate homeowner's policy. Karen Worthington is claimed to have acted negligently in giving Richard Worthington access to his firearms when he was obviously agitated and unstable and when she knew of his threats of bodily harm to her doctor and personnel at the hospital, and having such knowledge, in failing to warn the hospital and the authorities of his intent to do violence at the hospital. Applying Utah's definition of an accident as "an unlooked-for mishap which is not expected or designed," *Hoffman*, 669 P.2d at 416 (Utah 1983), citing *Schmidt v. Industrial Commission of Utah*, 617 P.2d

693 (Utah 1980), I fail to see how such definition could encompass the allegations made against Karen Worthington in the Utah state cases. Given Karen Worthington's awareness of her husband's mental state, the threats he had made and her knowledge that he was bound for the hospital with an arsenal of firearms, the death of Karla Roth and the injuries sustained by the other Defendants should be deemed "naturally and probably expected or anticipated," *Hoffman*, 669 P.2d at 416, as she furnished the weapons to her husband and then failed to warn.

Moreover, I do not agree with the majority that the reference in the pertinent section of the Allstate policy to "an insured person" is ambiguous. It should be noted that the pertinent family liability section of the policy uses the phrase "an insured person" five times during the explanation of included and excluded losses. The phrase "the insured person" is used only once, and that use occurs at the end of the liability section and understandably applies only to the insured who is actually charged with a crime. As a result, when the liability section is construed as a whole, I am of the opinion that the language used by Allstate in this section of its policy is not ambiguous but "is sufficient to demonstrate that the intentional act of any insured negates coverage for claims brought against another insured." *Allstate Insurance Co. v. McCranie*, 716 F.Supp. 1440, 1448 (S.D.Fla.1989), *aff'd*, 904 F.2d 713 (11th Cir. 1990). *See also, Allstate Ins. Co. v. Gilbert*, 852 F.2d 449 (9th Cir.1988); *Allstate Ins. Co. v. Roelfs*, 698 F.Supp. 815 (D.Alaska 1987); *Allstate Ins. Co. v. Foster*, 693 F.Supp. 886 (D.Nev.1988); *State Farm Fire and Casualty Co. v. Davis*, 612 So.2d 458 (Ala.1993); *Allstate Ins. Co. v. Freeman*, 432 Mich. 656, 443 N.W.2d 734 (1989); *Allstate Ins. Co. v. Mugavero*, 79 N.Y.2d 153, 581 N.Y.S.2d 142, 589 N.E.2d 365 (1992).

The alternative determination of the district court to allow insurance coverage for Karen Worthington was on the basis that she was an innocent co-insured under the rule enunciated in *Error v. Western Home Ins. Co.*, 762 P.2d 1077 (Utah 1988). Such determination is clearly erroneous considering the allegations made against her in the Utah

state cases and the requirement of the Courts who have embraced this rule that such a co-insured must have no involvement in the events which caused the damage. *Hedtcke v. Sentry Ins. Co.*, 109 Wis.2d 461, 326 N.W.2d 727 (1982); *Auto–Owners Ins. Co. v. Eddinger*, 366 So.2d 123 (Fla.1979); *Economy Fire and Casualty Co. v. Warren*, 71 Ill.App.3d 625, 28 Ill.Dec. 194, 390 N.E.2d 361 (1979). Karen Worthington admittedly gave her husband the firearms and failed to warn the hospital of his intentions. Thus, she was not an innocent co-insured but was a co-insured involved in the events bringing about the damage complained of by the Defendants. The majority did not treat with this alternative finding, but in dissent I should. I would find the fire insurance case of *Error*, in which the co-insured wife was completely innocent in that she was not in any way involved in the act of arson committed by her co-insured husband, to be not applicable to the facts of this case and the alternative finding to be erroneous. Karen Worthington was not innocent but was involved.

In summary, it seems clear to me that the allegations made against Karen Worthington in the Utah state cases concerning her furnishing her husband his weapons and with knowledge of his threats of violence failing to warn the hospital or authorities of his intent in going to the hospital describe deliberate conduct on her part with expected consequences of violence. Such conduct does not constitute an accident as required by the applicable section of the insurance policy for it to afford coverage to her. As stated above, the relevant section specifically excludes coverage for injuries resulting from an act (furnishing firearms) or omission (failing to warn) expected to cause bodily injury, even though not of a precise kind or degree or sustained by a different person than that intended. Such conduct also does not sustain an accident under Utah law, which requires a result not expected or anticipated. It also seems clear to me that the use of the words "an insured person" in the relevant liability section means any insured person, thus excluding Karen Worthington from coverage on this basis as well. The briefs cite four federal and at least six state cases to this effect

and they also find no ambiguity in this meaning and intent. As a question of law for the Court, I would find no ambiguity in the liability section. The innocent co-insured rule used in *Error* is inapplicable to the admitted facts of this case. I would therefore reverse the district court's holding that Allstate has the duty to defend and indemnify its insured, Karen Worthington Brown, as to the suits brought against her by the Defendants.